NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| NELSON PAEZ, | : | |
| Plaintiff, | : | **Hon. Dennis M. Cavanaugh** |
| v. | : | **Opinion** |
| MICHAEL LYNCH, | : | Civil Action No. 07-cv-5036 (DMC) |
| Defendant. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendant Michael Lynch ("Defendant"). Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on all remaining counts of the Complaint filed by Plaintiff Nelson Paez ("Plaintiff"). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is **granted**.

I. BACKGROUND[1]

On December 27, 2003, Plaintiff Nelson Paez was operating a motor vehicle on Tonnelle Avenue in North Bergen, New Jersey when he struck an unknown object. Plaintiff did not immediately stop at the scene of the accident.[2] When he returned to the accident site, the incident

---

[1] The facts in this Opinion are taken from the parties' moving papers.

[2] Plaintiff asserts that he drove to the next intersection where he could make a legal U-turn, and then promptly returned to the area where he struck the object. Defendant asserts that Plaintiff returned to the scene approximately 20 minutes after the accident. For the purposes of this summary judgment

was being investigated by officers from the North Bergen Police Department. Plaintiff learned that he had struck and killed a pedestrian, Roggie Gutierrez.

Plaintiff was arrested on suspicion of driving while intoxicated and taken to the North Bergen Police Department where a breathalyzer test was administered. His blood alcohol content was .03, which is below the *per se* limit of .08 which establishes an offense of driving while intoxicated. Prior to releasing Plaintiff from custody, Patrolman E. Marino charged him with driving while intoxicated and leaving the scene of an accident. The charges were referred to the Hudson County Prosecutor's Office.

On December 28, 2003, a post-mortem examination of Roggie Gutierrez was performed at the Regional Medical Examiner Office in Newark, New Jersey by Margaret Prial, M.D. On Tuesday, January 20, 2004, the New Jersey State Toxicology Laboratory reported high levels of alcohol present in the decedent–indicative of intoxication. The post-mortem results (including the toxicology findings), were reduced to a report on February 7, 2004, and distributed to the Hudson County Prosecutor's Office ("HCPO").

On April 27, 2004, Defendant presented evidence to the Hudson County Grand Jury. Joseph Rao, an investigating officer from North Bergen, was the sole witness testifying before the grand jury.[3] Rao told the jurors that it was his opinion that Plaintiff had been traveling at a high rate of speed.[4] Rao did not discuss the Gutierrez toxicology report, and did not indicate that the decedent was intoxicated. The government did, however, introduce evidence that a witness had testified that

---

motion, the fact is immaterial.

[3] Mr. Rao was previously a defendant in this action. On May 27, 2009, the Complaint was dismissed as to Mr. Rao and the Township of North Bergen.

[4] Mr. Rao testified that the speed limit in the vicinity of the accident was 35 miles per hour. Plaintiff asserts that the limit is forty miles per hour.

the decedent "looked fine" (i.e., not intoxicated) prior to the accident. Plaintiff contends that the testimony presented to the grand jury failed to include material exculpatory evidence. The grand jury returned an indictment charging Plaintiff with vehicular homicide.

In June 2004, the state police concluded a Fatal Accident Investigation, and the results were forwarded to the Prosecutor's Office. The report concluded that there was no cause of action against Plaintiff.

Plaintiff alleges that, during trial preparations, his attorney repeatedly requested exculpatory evidence. He asserts that he was not provided with either the Fatal Accident Report, or the Medical Examiner's report. Defendant responds that he was unaware that the reports existed.

In October 2004, Judge Shirley Tollentino dismissed the indictment against Plaintiff. The dismissal was vacated on appeal, and returned for trial. When the matter came up for trial on October 19, 2005, Defendant moved to dismiss, as the state police reiterated their position that Plaintiff had not been driving recklessly. The case was dismissed.

Plaintiff brings this suit against Defendant, asserting a federal claim for malicious prosecution under 42 U.S.C. § 1983, and a state law claim for malicious prosecution under N.J.S.A. 10:6-2.[5] Defendant moves for summary judgment as to both claims.

## II. STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex

---

[5] Plaintiff initially asserted a number of other claims that have been all been voluntarily dismissed.

Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing either (1) there is no genuine issue of fact and it must prevail as a matter of law; or (2) that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Celotex, 477 U.S. at 331.  If either showing is made then the burden shifts to the non-moving party, who must demonstrate facts that support each element for which he bears the burden and must establish the existence of genuine issues of material fact.  Id.  The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, FED. R. CIV. P. 56(e), but must produce sufficient evidence to support a jury verdict in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The Court will consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

### III.  DISCUSSION

Defendant argues that he is entitled to immunity from the federal malicious prosecution claim under the Eleventh Amendment, as an "arm of the state" of New Jersey.[6]  For the reasons set forth below, Defendant's motion for summary judgment is granted as to the federal claim for malicious prosecution.  This Court will not exercise supplemental jurisdiction over Plaintiff's state law claim.

A.  SOVEREIGN IMMUNITY UNDER THE 11TH AMENDMENT

1. *Applicable Law*

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

---

[6] Defendant's additional arguments need not be addressed, as the Court finds that he is entitled to immunity.

United States by citizens of another state, or by citizens or subjects of any foreign state." Absent a state's consent, then, it is immune from suit. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984). Eleventh Amendment immunity extends to defendants who are "arm[s] of the state," Davis v. Lakewood, 2005 U.S. Dist. LEXIS 16420, at *3 (D.N.J. Aug. 4, 2005), including agencies, departments and officials of the state. Pennhurst, 465 U.S. at 101-102; Alabama v. Pugh, 438 U.S. 781, 781 (1978).

In Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989), the Third Circuit set forth a three-factor test to determine whether a defendant is indeed an "arm of the state" entitled to sovereign immunity: "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy [from the state]." Id. at 659; see also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 948 F. Supp. 400, 409 (D.N.J. 1996) (precluding suit where "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration.") (internal citation omitted).

2. *Analysis - The Fitchik Factors*

Defendant asserts that the HCPO is an "arm of the state" and is thus immune from suit. Specifically, Defendant asserts that (1) costs associated with this suit are to be paid from the state treasury, (2) the HCPO is considered a state entity under New Jersey law, and (3) the HCPO is subject to the State Attorney General's Office's oversight. Defendant argues, then, that in accordance with the Fitchik factors, the HCPO is entitled to sovereign immunity. Plaintiff responds that the Fitchik factors are not satisfied.

Plaintiff argues that the first Fitchik factor is not satisfied because Defendant has not shown

that the payment of attorney's fees and/or a potential judgment in this case would come from the state treasury. The Court does not agree. Recently, a court in this District observed, "the State of New Jersey must defend and immunize county prosecutors for alleged tortious conduct committed during the investigation, arrest, and prosecution of [a plaintiff], unless the alleged misconduct involves fraud, actual malice, or willful misconduct." Landi, 2009 U.S. Dist. LEXIS 17932, at *12-13; Wright v. New Jersey, 169 N.J. 422 (2001) (citing N.J. Stat. Ann. §§ 59:10A-1, 59:10-2); Beightler v. Office of the Essex County Prosecutor, 2009 U.S. App. LEXIS 18728, at *6-8 (3d Cir. N.J., Aug. 20, 2009) (unpublished). Plaintiff asserts that, under the circumstances here, Defendant's allegedly tortious conduct would not be defended by the State of New Jersey. This argument must fail, as Defendant's counsel has provided a letter from the State retaining counsel on behalf of Defendant. In light of the State's funding of Defendant's legal defense, the first factor of the Fitchik test has been satisfied. See, e.g., DeLisa v. County of Bergen, 326 N.J.Super. 32 (App. Div. 1999).

Next, Plaintiff asserts that Defendant cannot satisfy the second Fitchik factor. Plaintiff argues that the HCPO's conduct (through Defendant) was "administrative" in nature—not within its state law enforcement capacity—and therefore the HCPO would not be considered a state entity for the purposes of immunity. This assertion is not supported by the facts. See Plaintiff's Brief, at 19-20 (asserting that Defendant failed to dismiss the indictment in a timely manner, and failed to disclose certain exculpatory evidence). Defendant's allegedly improper conduct was entirely related to his role as a prosecutor. See Yarris v. County of Delaware, 465 F.3d 129 (3d Cir. 2006) (prosecutor entitled to immunity for making the decision to deliberately withhold exculpatory evidence before and during trial); see also Smith v. Holtz, 210 F.3d 186, 199 n.18 (3d Cir. 2000);

Parkinson v. Cozzolino, 238 F.3d 145, 152 (2d Cir. 2001).[7]  Under New Jersey law, "[w]hen prosecutors perform their law enforcement function, they are discharging a State responsibility that the Legislature has delegated to [them.]"  Landi, 2009 U.S. Dist. LEXIS 17932, at *11-13.  Defendant, here, was discharging a state law enforcement duty.  Contrary to Plaintiff's contention, Defendant has satisfied the second Fitchik factor.

As to the third Fitchik factor, the Court finds that the HCPO, when acting in its prosecutorial capacity, is not an autonomous entity.  New Jersey law mandates that the Attorney General maintain a supervisory role over county prosecutors exercising and enforcing law enforcement policy.  Slinger v. New Jersey, 2008 U.S. Dist. LEXIS 71723 (D.N.J. Sept. 4, 2008), at *25.  Moreover, the Attorney General is authorized to intervene and take over any investigation or prosecution initiated by county prosecutors.  Landi, 2009 U.S. Dist. LEXIS 17932, at *11-13 (noting that county prosecutor's offices are "subject to the Attorney General's right to supersede.");  N.J. Stat Ann. 52:17B-106.  Such authority weighs against Plaintiff's contention that the HCPO operates as an autonomous entity.  The third factor of the Fitchik test is satisfied.

In accordance with the factors enumerated by the Third Circuit in Fitchik, the Court finds that the HCPO constitutes an "arm of the state," and is entitled to immunity under the Eleventh

---

[7] Plaintiff cites the Third Circuit's decision in Coleman in support of his position that Defendant here was acting outside of his law enforcement capacity.  The Third Circuit has recognized that prosecutors perform two sets of functions: "(1) the administrative functions of operating their offices, and (2) the classic law enforcement and investigative functions for which they are chiefly responsible."  Beightler, 2009 U.S. App. LEXIS 18728, at *2.  In Coleman, however, the prosecutor was "decid[ing] whether an employee at his or her office is worthy of an open promotion, [and as such, he was] performing an administrative function on the local level entirely unrelated to the duties involved in criminal prosecution."  Coleman, 87 F.3d at 1505-06.  Defendant's conduct, here, in contrast, was directly related to the legal proceedings involving Plaintiff.

Amendment. See, e.g., Beightler, 2009 U.S. App. LEXIS 18728, at *6 (holding that sovereign immunity applied to county prosecutor's offices); Landi, 2009 U.S. Dist. LEXIS 17932, at *1 (same); Slinger, 2008 U.S. Dist. LEXIS 71723, at *25 (same); Kandil v. Yurkovic, 2007 U.S. Dist. LEXIS 93055, at *11-12 (D.N.J. Dec. 18, 2007) (same, collecting cases).[8]

   *3. Waiver*

Plaintiff argues that even if Defendant is an "arm of the state" entitled to immunity under the Fitchik test, New Jersey has waived sovereign immunity in the circumstances here.

First, Plaintiff relies on the New Jersey Tort Claims Act, i.e., N.J.S.A. 59:2-2(a), which reads that "a public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment **in the same manner and to the same extent as a private individual under like circumstances**." (emphasis added). Plaintiff asserts that the Act constitutes a waiver of sovereign immunity. Plaintiff is incorrect. A waiver of immunity exists only when a state "makes a 'clear declaration' that it intends to submit itself" to a Court's jurisdiction. See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675-76 (quoting Great N. Life Ins. v. Read, 322 U.S. 47, 54 (1944)). Anything less than an unequivocal

---

[8] The Court finds that Defendant has immunity pursuant to the Eleventh Amendment. As such, the Court need not make specific findings as to Defendant's actions or intentions in prosecuting Plaintiff.

The application of immunity notwithstanding, it must be noted that if Defendant's behavior did not conform with his duties as a prosecutor, Plaintiff is not without recourse. As the Supreme Court has explained, "[t]he immunity of prosecutors from liability in suits under §1983 does not leave the public powerless to deter misconduct or to punish that which occurs . . . [as a prosecutor is uniquely] amenab[le] to professional discipline by an association of his peers." Imbler v. Pachtman, 424 U.S. 409, 429 (1976); see State v. Frost, 158 N.J. 76, 89 (1999) (noting that "possible violations of special ethical rules governing prosecutors may be referred to appropriate district ethics committee for disciplinary action."); see also In re Grand Jury Appearance Request by Loigman, 183 N.J. 133, 144 (2005) (observing that under the Rules of Professional Conduct, prosecutors "must present exculpatory evidence and may not mislead the grand jury by allowing the telling of a half-truth or a distorted version of the facts.") (internal citations omitted).

waiver of immunity will not amount to a state's consent to suit. See Pennhurst, 465 U.S. at 99. This Court has explained

> [t]he State of New Jersey has never waived its sovereign immunity in the federal courts. The Tort Claims Act, N.J.S.A. 59:1-1 *et seq.*, re-established the doctrine of sovereign immunity for the State of New Jersey because it declared that immunity exists for the State for all actions unless specifically provided for under the Act.

Slinger, 2008 U.S. Dist. LEXIS 71723, at *12. The State of New Jersey has not explicitly waived Eleventh Amendment immunity through the enactment of the New Jersey Tort Claims Act. See Bennett v. Atlantic City, 288 F. Supp. 2d 675, 683 (D.N.J. 2003) (citing Rudolph v. Adamar of N.J., Inc., 153 F. Supp. 2d 528, 540-44 (D.N.J. 2001)).

Next, Plaintiff asserts that by participating in this litigation the State of New Jersey has implicitly waived its immunity. The Third Circuit has recently rejected an identical argument. Beightler, 2009 U.S. App. LEXIS 18728, at *7-8. Involuntary presence in federal court (e.g., answering a complaint) does not amount to a waiver of sovereign immunity. Id.

As the State of New Jersey has not waived its sovereign immunity under the Eleventh Amendment, Plaintiff's claim against Defendant must fail.[9]

Defendant's motion for summary judgment is granted.

**B.    STATE LAW CLAIM**

Plaintiff's federal claims have been dismissed and the Court will not exercise supplemental jurisdiction over the remaining state law claim. Although the Court may exercise jurisdiction over

---

[9] In addition to Defendant's immunity, Plaintiff's claim alleging constitutional violations must be dismissed because Defendant does not constitute a "person amenable to suit" for the purposes of § 1983. See Reed v. Straniero, 2009 U.S. Dist. LEXIS 91921, at *18-19 (D.N.J. 2009). To be amenable to suit under § 1983, an official must be acting outside the scope of his or her role as a public official. Id. at 19. Plaintiff has alleged no facts indicating that Defendant was acting in his individual capacity.

Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, declining supplemental jurisdiction after all federal claims are dismissed is appropriate where there is neither apparent unfairness nor any over-riding judicial interest.  See Figueroa v. Buccaneer Hotel, 188 F.3d 172, 181 (3d Cir. 1999); 28 U.S.C. § 1367(c)(3).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **granted** as to Plaintiff's federal claim.  The Court will not exercise supplemental jurisdiction over Plaintiff's state law claim.  An appropriate Order accompanies this Opinion.

S/ Dennis M.Cavanaugh  
Dennis M. Cavanaugh, U.S.D.J.

| | |
|---|---|
| Date: | December  23 , 2009 |
| Orig.: | Clerk |
| cc: | All Counsel of Record |
| | Hon. Mark Falk, U.S.M.J. |
| | File |